IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

AEROTEK, INC. and ALLEGIS          )
GROUP, INC.,                       )
                                   )
          Plaintiffs,              )
                                   )          1:22-cv-599
     v.                            )
                                   )
JOBOT, LLC and COREY DALTON,       )
                                   )
          Defendants.              )


MEMORANDUM OPINION AND ORDER

OSTEEN, JR., District Judge

     Plaintiffs Aerotek, Inc. and Allegis Group, Inc. bring
three claims for relief against Defendants Jobot, LLC and Corey
Dalton for trademark infringement and unfair competition under
the Lanham Act and unfair and deceptive trade practices under
N.C. Gen. Stat. § 75-1.1. (Doc. 1.) Pending before this court
are cross-motions for summary judgment, (Docs. 62, 66), and
Defendants' Motion to Withdraw Jury Demand, (Doc. 78). This
court will deny both motions for summary judgment and grant
Defendants' motion to withdraw jury demand.

I.   FACTUAL AND PROCEDURAL BACKGROUND

     Aerotek, Inc. is a recruiting and staffing agency with
offices throughout the United States and abroad. (Pls.' Ex. 2
Aerotek Quick Facts (Doc. 67-2) at 2.) Aerotek, Inc. is a

subsidiary of Allegis Group, Inc. (Pls.' Ex. 3 Kelly Dep. (Doc. 67-3) at 4.) Corey Dalton worked at Aerotek as a recruiter from 2007 until he left the company in 2021. (See Verified Compl. (Doc. 1) ¶ 23; Defs.' Ex. B Dalton Dep. (Doc. 70-2) at 3.) After Dalton left Aerotek, he was hired at Jobot as a "Principal Recruiter" in October 2021. (See Verified Compl. (Doc. 1) ¶ 24.) From October 2021 to July 29, 2022, while Dalton was employed at Jobot, Dalton's LinkedIn profile's "About" Section contained the following language:

> Aerotek® Inc. is a leading provider of technical, professional and industrial recruiting and staffing services. We are part of the Allegis Group® Inc., the second largest staffing company in the United States.
>
> Aerotek is your direct source to find qualified & skilled employees and locate great career opportunities with industry leading companies. Aerotek operates a network of more than 180 non-franchised offices throughout the United States, Canada and Puerto Rico. To learn more about Aerotek and see a complete list of our locations, visit our website at www.aerotek.com.
>
> Specialties: I specialize in technical staffing through Aerotek CE®, a division of Aerotek. I place professionals in many sectors with a focus on . . .

(See Verified Compl. (Doc. 1) ¶ 27; Golledge Decl. (Doc. 64) ¶ 9.) The same text was copied on Dalton's biography on Jobot's website. (See Verified Compl. (Doc. 1) ¶ 28.) Although the "About" Section on Dalton's LinkedIn was not updated, his

- 2 -

current occupation was listed as: "Principal Recruiter at Jobot." (See id. ¶ 26.)

Plaintiffs own federal service mark registrations for "AEROTEK" and "ALLEGIS GROUP." (Verified Compl. (Doc. 1) ¶¶ 13, 20.) Plaintiffs allege the references to Aerotek and Allegis Group Inc. on Dalton's LinkedIn page and on Jobot's website constitute trademark infringement. (See generally id.) Defendants took down the references to Aerotek and Allegis Group Inc. as soon as they received notice of this suit alleging trademark infringement. (Golledge Decl. (Doc. 64) ¶ 9.)

Plaintiffs filed their Complaint on July 29, 2022. (See Verified Compl. (Doc. 1).) On February 15, 2024, Plaintiffs and Defendants filed cross motions for summary judgment. (See Docs. 62, 66.) A trial is set for October 7, 2024. (See Notice of Hearing (Doc. 59).)

Plaintiffs bring three claims for relief. First, Plaintiffs bring a claim under Section 32 of the Lanham Act, alleging trademark infringement pursuant to 15 U.S.C. § 1114. Second, Plaintiffs bring a claim under Section 43(a) of the Lanham Act, alleging unfair competition pursuant to 15 U.S.C. § 1125 (a)(1)(A). Last, Plaintiffs bring a claim for unfair and deceptive trade practices pursuant to N.C. Gen. Stat. § 75-1.1 ("UDTPA"). Plaintiffs move for partial summary judgment as to

- 3 -

their claim for trademark infringement on liability only. (Pls.'
Mot. (Doc. 66) at 1.)

## II.  <u>**ANALYSIS**</u>

The Lanham Act protects trademark registrants from "any
reproduction, counterfeit, copy, or colorable imitation of a
registered mark" by allowing the registrant to commence a civil
action against trademark infringers for disgorgement of profits
or other damages. 15 U.S.C. § 1114(1).

To demonstrate trademark infringement, a plaintiff must
show both (1) "that it owns a valid and protectable mark," and
(2) "that the defendant's use of a 'reproduction, counterfeit,
copy, or colorable imitation' of that mark creates a likelihood
of confusion." <u>CareFirst of Md., Inc. v. First Care, P.C.</u>, 434
F.3d 263, 267 (4th Cir. 2006) (citation omitted) (quoting 15
U.S.C. § 1114(1)(a)). Actions under both Section 32 (trademark
infringement) and Section 43(a) (unfair competition) of the
Lanham Act require plaintiffs to show the alleged infringement
is likely to cause confusion. <u>Lone Star Steakhouse & Saloon,</u>

Inc. v. Alpha of Va., Inc., 43 F.3d 922, 930 (4th Cir. 1995); see also 15 U.S.C. § 1125(a)(1)(A).[1]

The parties do not dispute that Plaintiffs own a valid and protectable mark. (See generally Defs.' Resp. (Doc. 68).) Plaintiffs argue they are entitled to summary judgment because there is no genuine dispute of material facts and the relevant "likelihood of confusion factors resolve overwhelmingly in Plaintiffs' favor." (Pls.' Mem. (Doc. 67) at 27.) Defendants move for summary judgment on the grounds that, even if Plaintiffs established liability, they would not be entitled to any of the equitable remedies they seek. (See Defs.' Mem. (Doc. 63) at 17.) In Defendants' response to Plaintiffs' summary judgment motion, they ask this court to exercise its authority pursuant to Fed. R. Civ. P. 56(f) and grant summary judgment for Defendants sua sponte on the likelihood of confusion issue. (Defs.' Resp. (Doc. 68) at 16.)[2] Additionally, Defendants request oral argument on their motion for summary judgment. (Defs.' Mem (Doc. 63) at 24.)

---

[1] § 1125(a)(1)(A) "describes the cause of action known as 'false association'" and does not require the plaintiff to have a trademark as an element of the cause of action. Belmora LLC v. Bayer Consumer Care AG, 819 F.3d 697, 706 (4th Cir. 2016). In other words, it provides a vehicle for assertion of a claim for infringement of an unregistered mark. See Matal v. Tam, 582 U.S. 218, 225 (2017).

[2] Defendants did not mention the likelihood of confusion issue in their own motion for summary judgment.

### A.   Plaintiffs' Motion for Summary Judgment

In order to demonstrate trademark infringement under the Lanham Act, a plaintiff must prove that the defendant used a valid and protectable mark and that the use of that mark creates a likelihood of confusion. CareFirst of Md., Inc., 434 F.3d at 267. "Likelihood of confusion exists if 'the defendant's actual practice is likely to produce confusion in the minds of consumers about the origin of the goods or services in question.'" Id. (quoting KP Permanent Make-Up, Inc. v. Lasting Impression I, Inc., 543 U.S. 111 (2004)). The likelihood of consumer confusion is "an inherently factual issue," but, "as with any other issue of fact, summary judgment remains appropriate when no jury reasonably could have ruled in the non-moving party's favor." RXD Media, LLC v. IP Application Dev. LLC, 986 F.3d 361, 375 (4th Cir. 2021).

Thus, to resolve Plaintiffs' motion for summary judgment, this court must determine whether no reasonable juror could rule in Defendants' favor, or put another way, whether no reasonable juror could find that Defendants' use of Plaintiffs' mark on Defendants' LinkedIn page and website is not likely to produce confusion in the minds of consumers about the origin of the services offered.

The Fourth Circuit has identified nine factors that are "useful" to determine whether a likelihood of confusion exists:

> "(1) the strength or distinctiveness of the plaintiff's mark as actually used in the marketplace;" "(2) the similarity of the two marks to consumers;" "(3) the similarity of the goods or services that the marks identify;" "(4) the similarity of the facilities used by the [parties];" "(5) the similarity of advertising used by the [parties];" "(6) the defendant's intent;" "(7) actual confusion;" "(8) the quality of the defendant's product;"[3] "and (9) the sophistication of the consuming public."

Dewberry Eng'rs Inc. v. Dewberry Grp., Inc., 77 F.4th 265, 281 (4th Cir. 2023), cert granted, 144 S. Ct. 2681 (June 24, 2024) (citation omitted).[4] The factors are non-exclusive, and a court need not determine that all factors weigh in one party's favor in order to grant or deny summary judgment. See id. at 281–82. Not all factors are of equal importance, nor are they always relevant in any given case. See id.

Although Plaintiffs argue this issue may be resolved on summary judgement because the defendants used an identical mark in connection with providing goods or services similar to those offered and provided by the plaintiffs, (Pls.' Mem. (Doc. 67) at

---

[3] The parties agree the quality of the defendant's product is not relevant. (See Pls.' Mem. (Doc. 67) at 25; Defs.' Resp. (Doc. 68) at 29.)

[4] Although the Supreme Court has accepted Dewberry for review, the nine factors are current precedent in this circuit, see Grayson O Co. v. Agadir Int'l LLC, 856 F.3d 307, 314 (4th Cir. 2017), and binding on this court.

16), the cases they cite in support are factually distinct from the facts here. Namely, the cases involve bad faith or an intentional use of a plaintiff's mark in order to profit off plaintiff's name recognition. See, e.g., Nationstar Mortgage, LLC v. Ahmad, 155 F. Supp. 3d 585, 591 (E.D. Va. 2015) (finding bad faith).

For example, in Polo Fashions, Inc. v. Craftex, Inc., 816 F.2d 145 (4th Cir. 1987), the defendant was producing counterfeit goods "in an apparent attempt to capitalize upon the popularity of, and demand for, another's product." Id. at 148. Similarly, in JFJ Toys, Inc. v. Sears Holdings Corp., 237 F. Supp. 3d 311 (D. Md. 2017), the defendant sold an identical product as the plaintiff and gave the product nearly the same name. See id. at 320. The defendant had actual notice of infringement and the court found the defendant's behavior was "consistent with bad faith." Id. at 339. Again, in Capitol Comm'n, Inc. v. Capitol Ministries, No. 5:11-CV-214, 2013 WL 7224934 (E.D.N.C. Dec. 19, 2013), the court found that the "defendant intentionally used [the] plaintiff's mark in domain names to divert plaintiff's donors to defendant." Id. at *1.

Here, Plaintiffs did not provide evidence that Dalton or Jobot intentionally used Plaintiffs' namesake in order to profit off their name recognition. In fact, the evidence appears

- 8 -

undisputed Dalton forgot to update his LinkedIn profile, and Defendants' software automatically pulled Dalton's LinkedIn information onto their website. (See Dalton Dep. (Doc. 65-4) at 5; Golledge Decl. (Doc. 64) ¶¶ 8-10; Text Messages (Doc. 65-8).) Additionally, Defendants did not become aware of the Aerotek references on LinkedIn or their website until Plaintiffs filed this Complaint. (See Golledge Decl. (Doc. 64) ¶ 9; Text Messages (Doc. 65-8).)

Although intent to infringe is not a required element of trademark infringement, it is "sometimes a major factor in infringement cases" because "[i]f there is intent to confuse the buying public, this is strong evidence establishing likelihood of confusion." Pizzeria Uno Corp. v. Temple, 747 F.2d 1522, 1535 (4th Cir. 1984). Thus, although a defendant's intent or willfulness is not a necessary element of a successful trademark infringement claim, it remains a factor for courts to consider when deciding a motion for summary judgment.[5]

---

[5] Plaintiffs' motion for summary judgment does not argue that Defendants' alleged infringement was intentional. (See Pls.' Mem. (Doc. 67) at 24 (arguing Plaintiffs need not establish Defendants' intent to infringe).) However, in Plaintiffs' response to Defendants' motion for summary judgment, they argue that there is a genuine issue of material fact as to Defendants' intent because they behaved at least recklessly. (Pls.' Resp. (Doc. 69) at 15-16.) Regardless, even if Defendants behavior can be considered "reckless," this case is still factually distinct from the cases referenced above because those cases involve bad faith and/or purposeful or knowing conduct.

Plaintiffs also cite GoSecure Inc. v. Bhandari, 637 F. Supp. 3d 368 (E.D. Va. 2022), in support of their argument. GoSecure Inc. is distinct from the above cases because the court granted summary judgment for the plaintiff even though the plaintiff did not present evidence of bad faith or intent. Id. at 377. However, the facts of the case are distinguishable from the facts here. In GoSecure Inc., the defendant registered the domain name <gosecure.com> to establish a website to sell cybersecurity products. Id. at 373. The defendant also used the domain name to establish a blog and created a twitter account with the handle @goSecure. Id.

GoSecure, who also provided cybersecurity goods and services, attempted to buy the domain name from defendant, but was unsuccessful. Id. at 374. Several years later, the GoSecure filed a federal trademark application and successfully registered the mark GOSECURE. Id. The court found defendant liable for trademark infringement for the use of GoSecure's mark on defendant's website, blog, and twitter account because

> [c]onsumers encountering Defendant's website would likely be confused, at least temporarily, as to whether they could use it to purchase cybersecurity goods and services affiliated with Plaintiff, given the identical mark and the existing content suggesting the website operated in the same market as Plaintiff. Such confusion would likely prevent or frustrate internet users from accessing Plaintiff's own services given the identical nature of the marks and website content suggesting similar services.

Id. at 376.

The facts here are distinguishable from GoSecure Inc. because an individual who navigated to Dalton's LinkedIn page or Jobot's website would not likely be prevented or frustrated from accessing Plaintiffs' own websites. Additionally, Defendants did not operate a website, blog, or Twitter page using Plaintiffs' mark as a domain name.

Thus, the present case is distinguishable from cases where courts have granted summary judgment on the issue of likelihood of confusion because it does not involve intentional or bad faith infringement, nor would Defendants' unintentional use of Plaintiffs' mark likely prevent internet users from accessing Plaintiffs' own recruiting services. Additionally, an examination of the relevant factors shows that summary judgment, either in favor of Plaintiffs or Defendants, is not appropriate because there is a genuine dispute of fact over whether Defendants' use of the mark is likely to result in confusion.

### 1. Strength of Plaintiffs' Mark

The strength or distinctiveness of a plaintiff's mark is an important factor in considering whether there is a likelihood of confusion. See Synergistic Int'l, LLC v. Korman, 470 F.3d 162, 171 (4th Cir. 2006). Generally, the stronger the mark, the greater the likelihood that consumers will be confused by

- 11 -

competing uses of the mark. See id. "The strength of a mark is
the degree to which a consumer in the relevant population, upon
encountering the mark, would associate the mark with a unique
source. 'The "strength" of the trademark is evaluated in terms
of its conceptual strength and commercial strength.'" CareFirst
of Md., Inc., 434 F.3d at 269 (citation omitted).

A mark's conceptual or "inherent" strength focuses on the
linguistic "peculiarity" of the mark, "considered in relation to
the product, service, or collective organization to which the
mark attaches." Id. Here, the terms "AEROTEK" and "ALLEGIS
GROUP" are conceptually strong because they are "arbitrary or
fanciful" terms. See Grayson O Co. v. Agadir Int'l LLC, 856 F.3d
307, 315 (4th Cir. 2017) ("Arbitrary or fanciful marks typically
involve made-up words or words that are unrelated to the
product, like, 'Exxon®' gasoline or 'Apple®' computers.")
Defendants dispute the marks' commercial strength, but not their
conceptual strength. (See Defs.' Resp. (Doc. 68) at 28–29.)

"The commercial-strength inquiry, by contrast, looks at the
marketplace and asks 'if in fact a substantial number of present
or prospective customers understand the designation when used in
connection with a business to refer to a particular person or
business enterprise.'" CareFirst of Md., Inc., 434 F.3d at 269
(quoting Perini Corp. v. Perini Const., Inc., 915 F.2d 121, 125

- 12 -

(4th Cir. 1990)). Courts consider six factors when evaluating a mark's commercial strength: "(1) advertising expenditures; (2) consumer studies linking the mark to a source; (3) sales success; (4) unsolicited media coverage of the product; (5) attempts to plagiarize the mark; and (6) the length and exclusivity of the mark's use." Grayson O Co., 856 F.3d at 316.

Plaintiffs did not identify any unsolicited media coverage of the product or attempts to plagiarize the mark. (See Kelly Dep. (Doc. 67-3) at 22 (Plaintiffs' representative testifying he was not aware of other instances where Aerotek or Allegis Group wrote demand letters to enforce their trademarks).) Plaintiffs' corporate representative testified in his deposition that Plaintiffs spent "substantial sums" in "establishing and maintaining the Aerotek marks," through advertising and promoting, but did not provide an approximate dollar amount of expenditures. (Id. at 24-26.) The representative pointed to various ways Aerotek marketed its brand, such as attending job fairs, presenting at conferences, TV marketing, and social media marketing. (Id. at 29-33.) Plaintiffs also point to the brand's general long-standing success in the staffing industry as an indicator of its commercial strength. (See Aerotek Quick Facts (Doc. 67-2) at 2; Pls.' Answers to Interrogatories (Doc. 67-4) at 3-5.)

Plaintiffs argue that this court should find Plaintiffs' marks commercially strong as a matter of law, citing Dewberry Engineers Inc., 77 F.4th at 283, in support. (Pls.' Reply (Doc. 76) at 4–5.) In Dewberry Engineers Inc., the Fourth Circuit upheld the district court's determination that the plaintiff's mark, "Dewberry," was strong when "Dewberry" was arbitrary and the plaintiffs offered branding studies that indicated that "consumers in the real estate industry refer to Dewberry Engineers simply as 'Dewberry' and associate the mark with knowledge, quality and strong client service." Id. at 283 (cleaned up). The Fourth Circuit rejected the defendant's argument that a factfinder could reject such studies because the argument was based on mere speculation. Id. Here, however, Plaintiffs do not offer any type of consumer studies linking the Aerotek name to its services.

In Variety Stores, Inc. v. Walmart Inc., 852 F. App'x 711 (4th Cir. 2021), the Fourth Circuit found, on appeal of a jury verdict, that there was sufficient evidence for a reasonable juror to find commercial strength when the plaintiff: (1) "showed continuous use of its mark since 1993,"; (2) "spent over $40 million in 'advertising expenses that . . . were attributable to merchandise and services for [the mark over a period of 19 years];" (3) "sold over $64 million worth of

- 14 -

products with [the mark over a period of 13 years]"; (4) received one phone call over 20 years ago about licensing or selling the rights for the mark; and (5) presented evidence that they had sent two cease and desist letters in the past to suppliers using names that included the plaintiff's mark. <u>Id.</u> at 719.

Here, although the procedural posture is different, Plaintiffs' have presented significantly less evidence than in <u>Variety Stores, Inc.</u> Additionally, although Plaintiffs have stated that they spend a "substantial sum" on advertising, they do not offer an approximate number or context to evaluate this claim, thus this court cannot say that the purported expenditures on advertising weigh in favor of commercial strength. <u>See</u> <u>Grayson O Co.</u>, 856 F.3d at 316 (finding commercial strength weak on appeal of motion for summary judgment, when plaintiff's "sales and advertising expenditures were 'minimal' when compared to the 'multi-billion dollar hair care industry'"); <u>Low Tide Brewing, LLC, v. Tideland Mgmt. LLC</u>, No. 2:21-cv-0775, 2021 WL 1381123, at *7 (D.S.C. Apr. 12, 2021) (finding, on motion for preliminary injunction, commercial strength weak when plaintiff averred that it had spent $75,000 on paid advertising, earned $6 million in revenue since 2016, and won various awards related to its brewing).

"[V]ague statements" that a plaintiff has "continuously—and successfully—promoted its products under the [plaintiff's] mark," and has seen an "increase in 'sales, revenue, and number of offices' over several years," is not sufficient to show commercial strength. See Glob. Bioprotect LLC v. Viaclean Techs., LLC, No. 1:20cv553, 2021 WL 848710, at *4 (M.D.N.C. Mar. 5, 2021) (finding plaintiff failed to show commercial strength on a motion for preliminary injunction).

This court cannot say as a matter of law that the strength factor weighs in favor of one party over the other at this stage. It is undisputed that Plaintiffs' marks are conceptually strong. On the other hand, Plaintiffs' evidence of their commercial strength does not amount to much more than "vague statements." Thus, this factor is neutral at this stage. At best, it tips slightly in favor of Defendants because of the minimal evidence presented on the commercial strength issue.

### 2. Similarity of the Two Marks to Consumers

To determine whether two marks are similar, courts "examine the allegedly infringing use in the context in which it is seen by the ordinary consumer." CareFirst of Md., Inc., 434 F.3d at 271.

Defendants do not make any arguments regarding this particular factor, but rather argue as a whole that there is no

- 16 -

likelihood of confusion. (See generally Defs.' Resp. (Doc. 68).)
Here, there is no dispute that the marks appearing on Dalton's
LinkedIn page and on Jobot's website were identical to the
"AREOTEK" and "ALLEGIS GROUP" marks. Thus, this factor weighs in
favor of Plaintiffs.

### 3. Similarity of the Services the Marks Identify

With regard to the similarity of the services, the services
in question "need not be identical or in direct competition with
each other. Because confusion may arise even where products are
merely 'related,' the court is to consider 'whether the public
is likely to attribute the products and services to a single
source.'" Dewberry Eng'rs Inc. v. Dewberry Grp., Inc., 77 F.4th
265, 284 (4th Cir. 2023), cert granted, 2024 WL 3089540 (June
24, 2024) (citations omitted).

In Dewberry Engineers Inc., the Fourth Circuit affirmed the
district court's finding of trademark infringement on summary
judgment. Id. at 288. The court below found that the services
offered by the parties were sufficiently similar when the
plaintiff's mark was "registered for identifying real estate
development and development related services," and the defendant
"also engage[d] in real estate development and development
related services." Dewberry Eng'rs, Inc. v. Dewberry Grp., Inc.,
No. 1:20-cv-00610, 2021 WL 5217016, at *8 (E.D. Va. Aug. 11,

2021). The district court concluded that because the parties "services are overlapping," the factor weighed in favor of likelihood of confusion. Id. On appeal, the defendant argued that the plaintiff also offered "architectural and engineering services on a wholly different level of the broad real estate market than [defendant's] real estate development business." Dewberry Eng'rs, Inc., 77 F.4th at 284. The Fourth Circuit rejected this argument, finding that there was "plenty of evidence demonstrating both parties' use of their 'Dewberry' marks in related ways to generate real estate development business." Id.

In contrast, in Petro Stopping Centers, L.P. v. James River Petroleum, Inc., 130 F.3d 88 (4th Cir. 1997), the Fourth Circuit upheld the district court's judgment for defendant after a bench trial where it found no likelihood of confusion. Id. at 95. The plaintiff was the operator of a full-service automobile and truck travel center, which offered, among other things: "maintenance, weighing scales, truck washes, restaurants, retail stores, fax and ATM machines, showers, laundry, quiet rooms, game rooms, television rooms, movie theaters, and even barber shops." Id. at 95. The defendant operated "unmanned, self-service filling stations." Id. at 91. The Fourth Circuit stated:

- 18 -

"Besides the sale of fuel, the two parties' services and facilities differ[ed] in virtually every respect." Id. at 95.

Defendants argue that the services offered here "are not identical," because Defendants focus on "permanent placement of candidates" while Plaintiffs "focus on temporary staffing." (Defs.' Resp. (Doc. 68) at 27.) Defendants also argue that "the industry on which Dalton focused his final years at Aerotek (the construction trades) is distinct from his industry focuses at Jobot (the accounting and architectural industries). There was thus no overlap between Dalton's potential clients at Jobot and at Aerotek." (Id. at 27–28.)

The facts in this case are more analogous to Dewberry Engineers Inc. than Petro Stopping Centers. Here, it is not disputed that both parties are involved in the staffing and recruiting industry. Jobot's CEO testified that it provides recruiting and staffing services to its clients. (Golledge Dep. (Doc. 67-10) at 6, 15.) Aerotek also provides recruiting and staffing services. (See Aerotek Quick Facts (Doc. 67-2) at 2.)

Defendants attempt to distinguish Jobot's recruiting services by arguing that "Jobot focuses on direct, permanent placement of candidates." (See Defs.' Resp. (Doc. 68) at 6.) Dalton testified during his deposition that at Aerotek he focused on "blue collar," "contractor, project-based," and

- 19 -

temporary staffing, which was different than the type of staffing he did at Jobot. (Dalton Dep. (Doc. 70-2) at 6.) Dalton also testified that he did "direct" and "permanent" placements at Jobot, while he did "very different" types of placements at Aerotek. (Dalton Dep. (Doc. 77-1) at 8.)

Dalton additionally testified that at Aerotek he provided services in the "construction trades, professional office, manufacturing, [and] engineering" fields, while at Jobot he provided services in the "[a]ccounting, architectural, some engineering, [and] construction management"[6] fields. (Dalton Dep. (Doc. 67-11) at 8.) Defendant has identified some differences in the type of recruiting and staffing services they offer, but the parties still operate in the same general field of "staffing and recruiting." Although this characterization of the industry is broad, so is the "real estate development" industry, as described in Dewberry Engineers Inc.

Here, the services offered, although not identical, are similar. However, viewing the facts in the light most favorable to Defendants, there may be a genuine dispute of fact on this issue as the extent of the similarity between the two services

---

[6] Dalton clarified that construction management involves project managers and schedulers and is not a construction trade. (Dalton Dep. (Doc. 67-11) at 8.)

offered. Thus, this factor is not appropriate for resolution on summary judgment.

### 4. <u>Similarity of the Facilities Used by the Parties</u>

The parties dispute whether this factor is relevant in this factual context. "When considering the similarity of facilities, courts are trying to determine if confusion is likely based on 'how and to whom the respective goods of the parties are sold,' and the key question is whether 'both products [are] sold in the same "channels of trade."'" <u>Rosetta Stone Ltd. v. Google, Inc.</u>, 676 F.3d 144, 155 (4th Cir. 2012) (quoting 4 J. Thomas McCarthy, <u>McCarthy on Trademarks and Unfair Competition</u> § 24:51).

The "similarity of facilities" factor generally focuses on the physical channels and facilities parties use to sell their goods or services through. <u>See</u>, <u>e.g.</u>, <u>CareFirst of Md., Inc.</u>, 434 F.3d at 273 (analyzing appearance and placement of physical offices); <u>George Sink, P.A. Inj. Lawyers v. George Sink II L. Firm LLC</u>, 407 F. Supp. 3d 539, 556-57 (D.S.C. 2019) (finding a similarity of facilities where two law offices practiced the same type of law in the same city).

In <u>Dewberry Engineers, Inc.</u>, the district court found that the "similarity of facilities" factor did not aid in the likelihood-of-confusion analysis when both parties were service

providers. 2021 WL 5217016, at *8. The Fourth Circuit agreed that the similarity of the facilities factor was not applicable to the facts. <u>Dewberry Engineers Inc.</u>, 77 F.4th at 296 n.3 (Quattlebaum, J., concurring in part and dissenting in part).

The facilities factor is likely not relevant here.[7] However, even if this court did analyze it, it would not weigh in favor of Plaintiffs because Plaintiffs' cited evidence does not support their argument. Plaintiffs state that "[a]ll party-entities provide their services to the same class of clientele on interactive internet websites[,] . . . social media accounts (LinkedIn, X, Facebook, and Instagram), and job boards such as Indeed, Glassdoor, and LinkedIn to recruit candidates and client." (Pls.' Mem. (Doc. 67) at 23.) The cited portions of Aerotek's CEO's deposition does not support this contention, and neither does Aerotek's Answers to Defendant's Interrogatory No. 4. (<u>See</u> Kelly Dep. (Doc. 67-3) at 18–19; Aerotek Answers (Doc. 70-7) at 6 ("Most of Aerotek's applications come through Aerotek.com or other job listing websites."))

_____

[7] This court agrees with Plaintiffs that <u>Passport Health, LLC v. Avance Health System, Inc.</u>, 823 F. App'x 141 (4th Cir. 2020) is factually distinct from the case here. That case involved the defendant's use of the plaintiff's mark as an "AdWord," which "is a search term that, when entered into a search engine, generates an advertisement for the purchaser alongside the search results." <u>Id.</u> at 143.

- 22 -

### 5. **Similarity in Advertising**

When comparing advertising, courts "look at a variety of factors: the media used, the geographic areas in which advertising occurs, the appearance of the advertisements, and the content of the advertisements." CareFirst of Md., Inc., 434 F.3d at 273.

Defendants do not dispute that both parties advertise their services through similar media, such as through social media and staffing industry events. (See, e.g., Golledge Dep. (Doc. 67-10) at 16, 24.)[8] However, Plaintiffs do not present evidence or make arguments regarding the geographic areas in which advertising occurs, the appearance of the advertisement, or the content of the advertisement. (See Pls.' Mem. (Doc. 67) at 23.) Thus, this factor only weighs slightly in favor of Plaintiffs.

### 6. **Sophistication of the Consuming Public**

Plaintiffs argue this factor is not relevant because the parties offer their recruiting services "to the general public." (Pls.' Mem. (Doc. 67) at 25.) Defendants argue that this factor is relevant because the parties offer their services to

---

[8] This factor relates to the party advertising their own recruiting services. Some of the evidence Plaintiffs cite appears to be related to how Jobot recruits individuals internally, for a job as a recruiter at Jobot, (see Pls.' Mem. (Doc. 67) at 23 (citing Golledge Dep. (Doc. 67-10) at 5, discussing how Dalton applied for the recruiter position at Jobot)), which does not seem to be relevant under this factor.

sophisticated consumers and "[a] sophisticated company paying thousands of dollars to recruit a new hire would not be confused by the obvious inadvertent references to Plaintiffs in the 'About' section of Dalton's LinkedIn profile or Jobot biography page." (Defs.' Resp. (Doc. 68) at 24.)

The sophistication of the consumer "will only be relevant 'when the relevant market is not the public at-large.'" George & Co. LLC v. Imagination Ent. Ltd., 575 F.3d 383, 400 (4th Cir. 2009). "In cases where services are contracted by (presumptively) sophisticated clients, an inquiry into sophistication is warranted." Dewberry Eng'rs, Inc., 2021 WL 5217016, at *10; see also Sara Lee Corp. v. Kayser-Roth Corp., 81 F.3d 455, 467 (4th Cir. 1996) ("If the typical consumer in the relevant market is sophisticated in the use of — or possesses an expertise regarding — a particular product, such sophistication or expertise may be pertinent in determining the likelihood of confusion.") "[I]n a market with extremely sophisticated buyers, the likelihood of consumer confusion cannot be presumed on the basis of the similarity in trade name alone, particularly without the benefit of trial." Perini Corp. v. Perini Constr., Inc., 915 F.2d 121, 128 (4th Cir. 1990).

This court agrees that the relevant consumer base is not the public at large. A consumer base is the public at large when

- 24 -

the parties are producing a common good, for example. Cf. Sara Lee Corp., 81 F.3d at 467 (declining to consider sophistication of the consumer where parties sold pantyhose); George & Co. LLC, 575 F.3d at 400 (declining to consider sophistication of the consumer where parties sold dice games).

Defendants cite evidence that Jobot's clients pay them "thousands of dollars" to recruit new hires for them. (Defs.' Resp. (Doc. 68) at 24 (citing sealed Exhibit showing client invoices and amounts paid).) Defendants have produced some evidence that the relevant consumers here are sophisticated clients, thus this factor weighs against a likelihood of confusion and in favor of Defendants. However, Defendants have not "demonstrated as a matter of law that whatever sophistication the consumers had necessarily leads to the inference that it made them more or less likely to be confused." See Intercollegiate Women's Lacrosse Coaches Ass'n v. Corrigan Sports Enters., Inc., 694 F. Supp. 3d 625, 678 (M.D.N.C. 2023).

### 7. **Actual Confusion**

Although evidence of actual confusion is not required to prove trademark infringement, it "is the most important factor in determining" whether there was a likelihood of confusion. See RXD Media, LLC v. IP Application Dev. LLC, 986 F.3d 361, 373 (4th Cir. 2021); see also CareFirst of Md., Inc., 434 F.3d at

- 25 -

269 ("[T]he absence of any evidence of actual confusion over a substantial period of time . . . creates a strong inference that there is no likelihood of confusion.") A plaintiff may present evidence of actual confusion "through either anecdotal or survey evidence." RXD Media, LLC, 986 F.3d at 373.

Plaintiffs do not present any evidence of actual confusion but argue that the factor is "irrelevant" given the weight of other factors in Plaintiffs' favor. (Pls.' Mem. (Doc. 67) at 24.) Although some of the factors weigh in Plaintiffs' favor, the evidence is not so one-sided in Plaintiffs' favor that the most important factor of actual confusion is irrelevant.

Plaintiffs' cited cases do not support their argument that they are entitled to summary judgment despite lacking evidence of actual confusion. In Variety Stores, Inc. v. Walmart Inc., 852 F. App'x 711 (4th Cir. 2021), the Fourth Circuit found there was sufficient evidence to support the jury's finding that the defendant infringed the plaintiff's mark, despite the plaintiff not presenting its own evidence of actual confusion at trial. Id. at 720-21. The court merely re-affirmed the notion that the absence of actual confusion does not necessarily preclude a party from proving a likelihood of confusion. Id. at 721. Additionally, the court found there was sufficient evidence for a reasonable juror to find commercial strength, similarity of

- 26 -

the marks, and bad faith by the defendant. Id. at 719-20. This case is in a significantly different procedural posture, and this court does not find that Plaintiffs presented evidence of significant commercial strength, or any evidence of bad faith.

However, because actual confusion is not a required element of a trademark infringement claim, this court is not required to grant summary judgment sua sponte in favor of Defendants. Plaintiffs have at least presented some evidence of the strength of their marks, similarity of the marks used by Defendants, and similarity of the services the parties offer. When viewing the facts in light most favorable to Plaintiffs, this court cannot say that no reasonable juror would not likely be confused.

In sum, summary judgment for Plaintiffs is not appropriate because Plaintiffs have fallen short of their burden to show a likelihood of confusion. Thus, this court will deny Plaintiffs' motion for partial summary judgment. Additionally, for the reasons stated above, this court will deny Defendants' request for summary judgment sua sponte.

### B. Defendants' Motion for Summary Judgment

Defendants argue they are entitled to summary judgment because Plaintiffs have not produced evidence that they are entitled to any of the relief they seek. (Defs.' Mem. (Doc. 63) at 17.) Plaintiffs respond that they have produced evidence of

- 27 -

Defendants' profits, a genuine issue of material fact exists as to whether this court should issue a permanent injunction and as to Plaintiffs' entitlement to attorneys' fees, and, alternatively, Plaintiffs may be entitled to nominal damages. (Pls.' Response (Doc. 69) at 12, 18, 22, 24.)

"In a successful trademark infringement action, the Lanham Act entitles a plaintiff 'to recover (1) [the] defendant's profits, (2) any damages sustained by the plaintiff, and (3) the costs of the action.'" Dewberry Eng'rs Inc., 77 F.4th at 289 (quoting 15 U.S.C. § 1117(a)).

### 1. Actual Damages

In their response, Plaintiffs do not argue they are entitled to any actual damages. (See generally Pls.' Resp. (Doc. 69).) Although Defendants did not explicitly argue that Plaintiffs are not entitled to any actual damages, they do state that it is "undisputed that Plaintiffs seek solely equitable remedies," (Defs.' Mem. (Doc. 63) at 17), and Plaintiffs do not dispute this.

Additionally, Defendants state in a footnote: "Recovery under N.C. Gen. Stat. § 75-1.1 is likewise limited to situations where a plaintiff can prove actual injury as a direct and proximate result of the alleged violation." (Defs.' Mem. (Doc. 63) at 19 n.3.) Plaintiffs respond by arguing that "North

- 28 -

Carolina recognizes the remedy of disgorgement just as the Lanham Act does," but do not argue that they can show actual injury or damages caused by the violation. (See Pls.' Resp. (Doc. 69) at 18.)

Although courts "have held that a violation of the Lanham Act necessarily encompasses a violation of North Carolina's UDTPA," a plaintiff bringing a claim under UDTPA must still show that "(1) defendants committed an unfair or deceptive act or practice, (2) in or affecting commerce and (3) plaintiff was injured as a result." Design Res., Inc. v. Leather Indus. of Am., No. 1:10CV157, 2014 WL 4159991, at *13 (M.D.N.C. Aug. 19, 2014) (quoting Phelps-Dickson Builders, L.L.C. v. Amerimann Partners, 172 N.C. App. 427, 439, 617 S.E.2d 664, 671 (2005)).[9] Here, it is not clear that a non-willful infringement would constitute an unfair or deceptive act under the UDTPA, nor is it clear that Plaintiffs have shown they were injured or suffered actual damages as a result of the alleged infringement. However, the parties' discussion of the UDTPA claim is limited to the two

---

[9] Even if the remedy for a violation of N.C. Gen. Stat. 75-1.1 would be disgorgement of profits, as Plaintiffs argue, (see Pls.' Resp. (Doc. 69) at 18 (citing GE Betz, Inc. v. Conrad, 231 N.C. App. 214, 238, 752 S.E.2d 634, 652 (2013)), that does not negate that fact that in order to show a violation in the first place, Plaintiffs must demonstrate the unfair or deceptive act "proximately caus[ed] actual injury to [the plaintiff]." GE Betz, Inc., 231 N.C. App. at 236, 752 S.E.2d at 650.

- 29 -

sentences stated above, and this issue was not fully briefed.

Although Plaintiffs alleged in their Complaint that they

suffered harm to their goodwill, reputation, and loss of

revenues and profits, (see Verified Compl. (Doc. 1) at 13-14),

it seems Plaintiffs have not offered any evidence of this.

However, unlike a UDTPA claim, a claim for trademark

infringement under the Lanham Act does not require proof of

actual damage or injury. 4 J. Thomas McCarthy, McCarthy on

Trademarks and Unfair Competition § 30:57 (5th ed. 2024).

Defendants' arguments that they are entitled to summary judgment

because Plaintiffs cannot show they are entitled to any

equitable remedies are premature and cannot be decided before

the issue of liability is reached.

### 2. <u>Disgorgement of Profits</u>

> In assessing profits the plaintiff shall be required
> to prove defendant's sales only; defendant must prove
> all elements of cost or deduction claimed. . . . If
> the court shall find that the amount of the recovery
> based on profits is either inadequate or excessive
> the court may in its discretion enter judgment for
> such sum as the court shall find to be just, according
> to the circumstances of the case. Such sum . . . shall
> constitute compensation and not a penalty. The court
> in exceptional cases may award reasonable attorney
> fees to the prevailing party.

15 U.S.C. § 1117(a).

The Fourth Circuit has "outlined six equitable factors for

district courts to consider in connection with the disgorgement-

- 30 -

of-profits remedy for infringement under 15 U.S.C. § 1117(a)."

Dewberry Eng'rs Inc., 77 F.4th at 289. Those factors are:

> (1) whether the defendant had the intent to confuse or deceive, (2) whether sales have been diverted, (3) the adequacy of other remedies, (4) any unreasonable delay by the plaintiff in asserting his rights, (5) the public interest in making the misconduct unprofitable, and (6) whether it is a case of palming off.

Id. (quoting Synergistic Int'l., LLC v. Korman, 470 F.3d 162, 175 (4th Cir. 2006)). Defendants do not argue that Plaintiffs are not entitled to disgorgement of profits based on these factors, but argue that this court "need not reach that issue because profits are simply unavailable in this case; there are no profits attributable to the alleged infringement to disgorge." (Defs.' Mem. (Doc. 63) at 18 n.2.)

A trademark infringement plaintiff "is not entitled to profits demonstrably not attributable to the unlawful use of his mark." Dewberry Eng'rs Inc., 77 F.4th at 292 (quoting Mishawaka Rubber & Woolen Mfg. Co. v. S.S. Kresge Co., 316 U.S. 203, 206, (1942)). However, the defendant has the burden to demonstrate its profits are not so attributable. See Id. In Dewberry Engineers Inc., the Fourth Circuit held the district court did not abuse its discretion in finding profit disgorgement appropriate when the plaintiff's expert opined that the defendant's expert "did nothing to clearly demonstrate that

- 31 -

there was no connection between the infringing materials and its revenues," and the district court's factual finding that there was a connection was "not clearly erroneous." Id.

Defendants argue that this court should grant summary judgment because Plaintiffs have not demonstrated attribution. (Defs.' Mem. (Doc. 63) at 19.) However, as Dewberry Engineers Inc. explains, the burden is clearly on the defendant to show profits were not attributable to the alleged infringement. See Dewberry Eng'rs Inc., 77 F.4th at 292; see also Ga.-Pac. Consumer Prods. LP v. von Drehle Corp., 781 F.3d 710, 721 (4th Cir. 2015) (Under the Lanham Act, a plaintiff may recover profits "based only on proof of the defendant's sales, subject to a specific adjustment when necessary to compensate for an inadequate or an excessive award of profits.") Defendants raise many convincing arguments that any profits are in fact not attributable to the alleged infringing conduct, including in their reply, (see Defs.' Reply (Doc. 73) at 7-11), however, as explained below, this issue is not appropriate to resolve at summary judgment given there is a genuine dispute of material fact over liability.

Summary judgment for Defendants based on the argument that Plaintiffs cannot show they are entitled to any relief is not appropriate because the issue of liability has not been resolved

- 32 -

yet. Defendants' cited cases dealing with this issue were decided after the defendant was found liable for trademark infringement, either at the summary judgment stage or after trial. See, e.g., Dewberry Engineers Inc., 77 F.4th at 289 (affirming grant of summary judgment); Quick Techs. v. Sage Grp. PLC, 313 F.3d 338, 350 (5th Cir. 2002) (affirming jury verdict); Ill. Tool Works, Inc. v. Rust-Oleum Corp., 955 F.3d 512, 515–16 (5th Cir. 2020) (holding insufficient evidence that defendant's profits were attributable to the alleged infringement to warrant disgorgement of profits after a jury verdict in plaintiff's favor); Globefill Inc. v. Elements Spirits, Inc., 756 F. App'x 764, 765 (9th Cir. 2019) (affirming district court following a jury verdict finding defendant liable); Lincoln Diagnostics, Inc. v. Panatrex, Inc., No. 07-CV-2077, 2009 WL 3010840, at *1 (C.D. Ill. Sept. 16, 2009) (declining to award disgorgement of profits following a bench trial).

Defendants also cite a case where a district court explicitly declined to rule at summary judgment that the plaintiff is not entitled to relief before the issue of liability was resolved. See, e.g., True Homes LLC v. Clayton Homes, Inc., No. 3:18-CV-00345, 2020 WL 6528861, at *9 (W.D.N.C. Nov. 5, 2020) ("Defendants ask the Court to rule at summary judgment that [the plaintiff] is not entitled to monetary

- 33 -

damages in any amount. The Court declines that invitation and will wait to address the amount of damages or profits to which Plaintiff is entitled (without directing that issue to the jury) after all the evidence has been presented and the jury has determined if trademark infringement has been established.") In dmarcian, Inc. v. DMARC Advisor BV, No. 1:21-cv-00067, 2024 WL 1916715 (W.D.N.C. May 1, 2024), the court rejected a similar attempt by the defendant. Id. at *20 ("The Defendant also moves for summary judgment based on the Plaintiff's purported failure to 'disclose cognizable evidence of damages.' The Court declines to address the sufficiency of the Plaintiff's evidence regarding damages in the context of summary judgment. Such issues are more appropriately addressed in a motion in limine or at trial.")

Defendants have not cited, nor has this court been able to identify, any case where a district court granted summary judgment for a defendant solely because the plaintiff failed to establish that they are entitled to a disgorgement of profits, without reaching the issue of liability first. Moreover, this court must consider the equitable factors identified in Synergistic before deciding whether to grant disgorgement of profits or not. See Dewberry Eng'rs Inc., 77 F.4th at 289. Defendants did not argue this issue. For the reasons above, this

- 34 -

court will deny Defendants' motion for summary judgment on the issue of profit disgorgement.

### 3. **Permanent Injunction**

"The Lanham Act vests courts with the 'power to grant injunctions, according to the principles of equity and upon such terms as the court may deem reasonable, to prevent' trademark infringement." Dewberry Eng'rs Inc., 77 F.4th at 288 (quoting 15 U.S.C. § 1116(a)).

A plaintiff seeking a permanent injunction must demonstrate: "(1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction." eBay Inc. v. MercExchange, L.L.C., 547 U.S. 388, 391 (2006).

Defendants argue that Plaintiffs are not entitled to a permanent injunction because "[t]here can be no reasonable expectation that Defendants will resume the infringement alleged in this case." (Defs.' Mem. (Doc. 63) at 22.) However, as stated above, deciding the issue of whether Plaintiffs are entitled to a permanent injunction is not appropriate before liability has

- 35 -

been resolved. Defendants cite cases dealing with this issue after a finding of trademark infringement. See Lyons P'ship L.P. v. Morris Costumes, Inc., 243 F.3d 789, 806 (4th Cir. 2001) (reversing district court's ruling denying defendant an injunction following bench trial); Gucci Am., Inc. v. Daffy's, Inc., 354 F.3d 228, 243 (3rd Cir. 2003) (affirming district court's denial of request for permanent injunction after district court found defendant had infringed plaintiff's trademark on summary judgment); Chi. Mercantile Exch. Inc. v. Ice Clear US, Inc., No. 18 C 1376, 2021 WL 3630091, at *31 (N.D. Ill. Aug. 17, 2021) (denying request for permanent injunction following a finding of trademark infringement).

In tagTrends, Inc. v. Nordstrom, Inc., No. SACV 13-00563, 2014 WL 12561604 (C.D. Cal. Sept. 30, 2014), the court granted summary judgment in favor of the defendant because it found the plaintiff's request for a permanent injunction was moot when the defendant removed the allegedly infringing conduct as soon as it become aware of it and the defendant expressed that it did not have any intention to re-engage in the conduct in the future. Id. at *3-4. However, the court went on to hold that, even though the defendant was entitled to summary judgment because it could not show it was entitled to any relief, the defendant was also entitled to summary judgment because the plaintiff could

- 36 -

not show the defendant's actions constituted trademark infringement under the Lanham Act. Id. at *6. Thus, the facts here are distinct because Defendants have not shown that they are entitled to summary judgment on the issue of liability as well as on the issue of relief.

This court has not resolved the issue of whether Defendants have in fact violated the Lanham Act and committed trademark infringement, thus, this court will not grant summary judgment for defendants based solely on the issue of whether Plaintiffs would be entitled to a permanent injunction or not.

### 4. **Attorneys' Fees**

Under the Lanham Act, a court may, in its discretion, award attorney's fees to the prevailing party in "exceptional cases." 15 U.S.C. § 1117(a).

> [A] district court may find a case "exceptional" and therefore award attorneys fees to the prevailing party under § 1117(a) when it determines, in light of the totality of the circumstances, that (1) there is an unusual discrepancy in the merits of the positions taken by the parties, based on the non-prevailing party's position as either frivolous or objectively unreasonable; (2) the non-prevailing party has litigated the case in an unreasonable manner; or (3) there is otherwise the need in particular circumstances to advance considerations of compensation and deterrence.

Ga.-Pac. Consumer Prods. LP, 781 F.3d at 721 (internal quotation marks and citations omitted).

- 37 -

Plaintiffs argue they are entitled to attorneys' fees because "[t]his is an open-and-shut trademark infringement case," and Defendants "take objectively unreasonable positions." (Pls.' Resp. (Doc. 69) at 22.) While it is highly unlikely that Plaintiffs would be able to show that they would be entitled to attorneys' fees if they prevailed, this issue is likewise not ripe for decision prior to determining liability. Plaintiffs have not identified any case where this issue was resolved prior to the issue of liability.

### 5. **Nominal Damages and Costs**

Plaintiffs argue that even if they are not entitled to other relief, they would at least be entitled to nominal damages and costs if they prevail. (Pls.' Resp. (Doc. 69) at 24–25.) Defendants argue nominal damages are not available even if Plaintiffs prevailed.[10] (Defs.' Reply (Doc. 73) at 12–13.)

In Lumber Liquidators, Inc. v. Stone Mountain Carpet Mills, Inc., No. 3:08CV573, 2009 WL 10689508 (E.D. Va. Aug. 3, 2009),

---

[10] Defendants do not appear to dispute that costs would be available to Plaintiffs if they prevailed: "Plaintiffs also argue that their claim to costs of suit survives Defendants' motion. If the Court agrees, and if any of Plaintiffs' claims survive summary judgment on liability, Defendants respectfully request that the Court (1) rule that Plaintiffs are as a matter of law not entitled to disgorgement, injunctive relief, attorneys' fees, or nominal damages; and (2) hold a bench trial on liability, with costs of suit being the only available remedy." (Defs.' Reply (Doc. 73) at 13 n.8.)

the district court granted the defendant's motion for judgment
as a matter of law on the issue of the plaintiff's damages after
the plaintiff presented its case in chief to a jury during
trial. Id. at *1-2. The court found that, even assuming the
plaintiff could prove a violation of the Lanham Act, the
plaintiff did not present any evidence of actual damages, or
evidence of defendant's sales, thus a reasonable jury could not
award the plaintiff actual damages or the defendant's profits as
compensation for the alleged infringement. Id. at *2. The court
noted that the plaintiff's "failure to demonstrate that it
suffered actual damages [did] not, however, preclude an award of
injunctive relief," if the plaintiff went on to demonstrate
infringement. Id.

      The plaintiff then filed a motion for reconsideration,
arguing it could be entitled to nominal damages if it was to
succeed on its infringement claim under the Lanham Act. See
Lumber Liquidators, Inc. v. Stone Mountain Carpet Mills, Inc.,
No. 3:08CV573, 2009 WL 2876881, at *1 (E.D. Va. Sept. 2, 2009).
The district court denied the motion, reasoning that Fourth
Circuit precedent required a plaintiff to show actual damages in
order to recover damages under the Lanham Act, and thus nominal
damages were not available. Id. (citing Xoom, Inc. v. Imageline,

Inc., 323 F.3d 279, 286, abrogated on other grounds by Reed
Elsevier, Inc. v. Muchnick, 599 U.S. 154 (2010)).

In BSN Medical, Inc. v. Parker Medical Associates LLC, No.
3:09cv15, 2011 WL 5509030 (W.D.N.C. Nov. 17, 2011), the court
declined to award summary judgment based on the argument that
the party failed to offer sufficient proof of damages because
either party could prove nominal damages. Id. at *11. However,
the plaintiff in that case brought multiple claims along with
its Lanham Act claims, including a breach of contract claim and
common law unfair competition or trade practices claim, where
nominal damages were more clearly available. Id. The BSN
Medical, Inc. court did not consider whether nominal damages are
available solely under the Lanham Act.

In Selee Corp. v. McDanel Advanced Ceramic Technologies,
LLC, No. 1:15-cv-00129, 2017 WL 3122565, at *5 (W.D.N.C. July
21, 2017), the court, on a motion for attorney's fees, noted the
jury's verdict: "The jury found that the Defendant's
infringement, although willful, resulted in no adverse effect
whatsoever to the Plaintiff, as shown by its nominal damage
award of one dollar." Id. at *5. It does not appear that the
defendant in that case argued that nominal damages were not
available for trademark infringement under the Lanham Act.

- 40 -

The cases Plaintiffs cite in support either do not directly address the issue or hold that nominal damages are available for at least some other common law claims. Regardless, because this issue is not ripe, nor is it dispositive of Defendants' motion for summary judgment, this court will defer deciding this issue until after liability has been resolved.

In conclusion, this court will deny Defendants' motion for summary judgment. Although Defendants raise strong arguments against awarding any type of relief, these issues cannot be resolved at summary judgment before the issue of liability has been resolved.

### C.   **Defendants' Motion to Withdraw Jury Demand**

Defendants request that this court permit them to withdraw their jury demand over Plaintiffs' objection. (Defs.' Opp. Mot. to Withdraw Jury Demand (Doc. 78).) Plaintiffs oppose this request. (Pls.' Resp. (Doc. 80).) Plaintiffs argue that they "pleaded actual damages in their Complaint and have never conceded that they did not suffer actual damages as a result of Defendants' infringement." (Id. at 3.) Alternatively, Plaintiffs request that this court should first rule on the parties' cross-motions for summary judgment "to determine the nature and scope of the trial," before determining whether Plaintiffs have a right to a jury trial. (Id. at 4.)

Plaintiffs did not request a jury trial in their Complaint. (See generally Verified Compl. (Doc. 1).) Defendants requested "a trial by jury on all issues so triable" in their answers. (See Answers (Docs. 14, 15).) Defendants now seek to withdraw their jury demand because Plaintiffs "admit that they only seek" equitable remedies. (See Defs.' Mem. (Doc. 79) at 2.)

"A proper demand [for a jury trial] may be withdrawn only if the parties consent." Fed. R. Civ. P. 38(d). When either party has demanded a jury trial, a jury trial on all issues so demanded is required unless "the court, on motion or on its own, finds that on some or all of those issues there is no federal right to a jury trial." Fed. R. Civ. P. 39(a)(2). "Regarding withdrawal of a jury demand, consent of the other parties is required under Rule 38(d) only where jury trial is a matter of right." Martin v. Bimbo Foods Bakeries Distrib., Inc., No. 5:14-CV-17, 2016 WL 6459609, at *1 (E.D.N.C. Oct. 31, 2016) (citing Kramer v. Bank of Am. Secs., LLC, 355 F.3d 961, 968 (7th Cir. 2004)).

"[A]lmost all courts have held that there is no right to trial by jury if the only monetary remedy the trademark owner seeks is an accounting of the alleged infringer's profits." 5 J. Thomas McCarthy, McCarthy on Trademarks and Unfair Competition § 32:124 (5th ed. 2024). In Monster Daddy, LLC v. Monster Cable

Products, Inc., No. 6:10-1170, 2013 WL 3337828 (D.S.C. July 2, 2013), the district court held that a plaintiff was not entitled to a jury trial when the plaintiff admittedly only sought recovery of the defendant's profits under the Lanham Act and attorney's fees. Id. at *17. Similarly, in Ciphertrust, Inc. v. Trusecure Corp., No. 1:04-cv-1232, 2005 U.S. Dist. LEXIS 46322 (E.D. Va. Nov. 28, 2005), the district court held that a plaintiff was not entitled to a jury trial when the plaintiff conceded it could not prove actual damages on its trademark infringement claim, and the only damages available were equitable in nature. Id. at *69-70.

As explained above, although Defendants did not explicitly argue at summary judgment that Plaintiffs are not entitled to any actual damages, Defendants did state that it is "undisputed that Plaintiffs seek solely equitable remedies," (Defs.' Mem. (Doc. 63) at 17), and Plaintiffs did not dispute that point. Here, it does not seem that Plaintiffs are arguing that they suffered actual damages as a result of the alleged infringement. Rather, Plaintiffs argue that recovery of a defendant's profits may be considered legal in nature when the profits "are a mere proxy for actual damages." (Pls.' Resp. (Doc. 80) at 3).)

In some trademark infringement cases, a "plaintiff's damages may be measured by the profits lost by plaintiff because

- 43 -

of defendant's infringement." 4 J. Thomas McCarthy, McCarthy on Trademarks and Unfair Competition § 30:79 (5th ed. 2024). Under this theory, a plaintiff has the burden to prove causation between its lost sales and the defendant's infringement. Id. In some cases where parties are in direct competition, the profits made by a defendant can be used as a rough estimate of a plaintiff's lost sales. Id. "The theory is that every sale made by the infringer was a sale that would have been made by plaintiff." Id.

Putting aside the fact that Plaintiffs have not identified any case in this circuit implementing this theory of damages, Plaintiffs clearly state that they are seeking Defendants' profits under a theory of disgorgement, not as a proxy for loss of Plaintiffs' own sales. (See Pls.' Resp. (Doc. 80) at 3 ("Plaintiffs seek disgorgement of Defendants' profits . . . .").) The very case that Plaintiffs cite in support makes clear the distinction between seeking a defendant's profits under a disgorgement theory versus seeking a defendant's profits as a measure of the plaintiff's own damages. See F21 OpCo, L v. Airwair Int'l Ltd., No. 2:22-cv-01684, 2023 WL 2626368, at *2 (C.D. Cal. Feb. 17, 2023).

Plaintiffs have made clear through their briefing that they are only seeking a disgorgement of Defendants' profits, a

- 44 -

permanent injunction, and potential attorneys' fees. These are all equitable remedies and thus no right to a jury trial attaches. For these reasons, this court will grant Defendants' Motion to Withdraw Jury Demand.

III. <u>CONCLUSION</u>

For the foregoing reasons, this court will deny both parties' motions for summary judgment and grant Defendants' motion to withdraw jury demand.

**IT IS THEREFORE ORDERED** that Defendants' Motion for Summary Judgment on Plaintiffs' Requested Relief, (Doc. 62), is **DENIED.**

**IT IS FURTHER ORDERED** that Plaintiffs' Motion for Partial Summary Judgment, (Doc. 66), is **DENIED.**

**IT IS FURTER ORDERED** that Defendants' Opposed Motion to Withdraw Jury Demand, (Doc. 78), is **GRANTED.**

This the 30th day of September, 2024.

_____
United States District Judge

- 45 -